EDWARD S. VROOMAN, Claimant, *v.* THE STATE OF NEW YORK, Defendant. (Claims Nos. 18871 and 18926.)

Court of Claims, November 9, 1931.

*Ralph J. Ury* and *William M. Nicoll*, for the claimant.

*Hamilton Ward, Attorney-General [James Gibson, Second Assistant Attorney-General,* and *L. A. Walker, Deputy Assistant Attorney-General,* of counsel], for the defendant.

ACKERSON, J. The claimant, Edward S. Vrooman, on the 14th and 15th days of March, 1929, was the owner of a lot and dwelling house thereon known as Nos. 3 and 5 Washington avenue in the city of Schenectady.

This property is situated about two hundred feet from the south bank of the Mohawk river, then and now a part of the Barge Canal. The claimant alleges that in the early morning hours of March 15, 1929, the Mohawk river overflowed its banks opposite his premises, and that its flood waters reached such a height that it invaded his property and damaged him to the extent of $480, which amount is conceded by the State.

The claimant contends, and has produced before the court much testimony to substantiate his contention, that his property would not have been flooded by the water in question but for the operations in the Mohawk river of the State of New York in con-

structing the Barge Canal. He claims that the State so raised the elevation of the surface of Haselo island above lock 8 that the flood waters of the river could not flow over it; that as a result of such elevation the flood channel of the river was narrowed at this point to such an extent that a large ice jam formed at the head of this island on March 14, 1929; that on the afternoon or night of said March fourteenth the accumulation of water behind this ice jam became so great that the river overflowed its banks, swept away the jam, precipitating this immense body of water down the river and into the city of Schenectady. Upon arriving at Schenectady the claimant contends that this rush of water and ice was met and held back by the water and ice in the pool of the Visscher's Ferry dam, seven and one-half miles below, to such an extent that his property was overflowed and damaged.

We are not satisfied that the operations of the State in raising the surface elevation of a portion of Haselo island contributed in any way to the formation of an ice jam at the time in question either at or above that island. But even if it did, the State cannot be held liable for damages, because the State owned the island and had a perfect right to deposit spoil upon it and raise its elevation if it desired to do so. Such action on the part of the State cannot in our judgment be made the basis of a claim for damages such as the one before us.

The real question before us here is whether or not the Visscher's Ferry dam, about seven and one-half miles below the property in question, was the cause of the damage suffered by this claimant.

Both the State and the claimant have had much to say about previous floods in the Mohawk river at this point. It appears that on several occasions prior to the construction of the Visscher's Ferry dam the water was nearly as high or higher in Schenectady than it has been since. It also appears that for several floods since the construction of the Visscher's Ferry dam the State has been held responsible therefor by reason of such dam and has been compelled to respond in damages to claimants in and about Schenectady who were damaged by the high water. The most important claims of this character are what is known as the Glenville bridge cases. These were two claims filed by the town of Glenville for the destruction of two bridges situate just below the city of Schenectady. These two bridges were washed away and destroyed by a flood in the Mohawk river on the 28th day of March, 1914. The claimant contended that the high water which washed away these two bridges was due to the Visscher's Ferry dam. The court so found as is set forth in its 17th finding of fact in the decision of those claims which reads as follows:

"XVII. That when the ice above stream started to go out on March 27th, 1914, it flowed down stream until it struck the pond of ice formed by and caused by the construction of the Visscher's Ferry dam running from 1,920 feet in width at the crest of the dam back to the narrow portion of the river at 'The Knolls,' and striking against this solid pond of ice, formed an ice gorge at 'The Knolls' and this ice gorge becoming greater as the ice came down stream, backed both ice and water up until at the Aqueduct the height of the water was raised sufficient to come up on the upper side of the Aqueduct beyond and above the bottom of the trunk of the Aqueduct, and this condition again formed an ice gorge above the Aqueduct, which in turn, as the ice kept coming down stream, raised the water and ice practically up to the top of the masonry arches of the Aqueduct and formed a jam, which raised the water beyond, so that on March 28th, 1914, it completely submerged the bottom of the Freeman's Bridge and the Alplaus Bridge to such an extent as to carry away both bridges on said date."

In that flood the ice on the pond of the Visscher's Ferry dam caused an ice jam at the "Knolls" which set the water and ice back to such an extent as to cause another ice jam at the Aqueduct which backed up the water and ice until it raised high enough to reach the bridges and carry them away.

In the flood now under consideration there was no "backing up" of the water from the vicinity of Visscher's Ferry dam. Neither is there any satisfactory evidence in the case to show that there was any ice jam at the "Knolls" caused by the ice on the pond of the Visscher's Ferry dam. This flood came down from above instead of backing up from below and before it had reached its height at Visscher's Ferry dam it was receding from claimant's property. A great change had been made in the river bed since March 28, 1914, the date when the Glenville bridges were destroyed, and before the date of this present flood, which occurred on March 14 and 15, 1929. Structures in the river had been taken out and several hundred thousand yards of excavation had been taken from the river bed.

The Visscher's Ferry dam is located at lock 7, which is approximately seven and one-half miles below the city of Schenectady. Lock 8 is just above the city of Schenectady. Lock 9 is about five miles west of, or above, lock 8. With the relation of those points in mind the exact time of the high water at each place as shown by our finding No. 50 clearly demonstrates to us that this was not a flood caused by water backing up to Schenectady and onto claim-

ant's property from the Visscher's Ferry dam or any other obstruction below the city of Schenectady.

Finding of fact No. 50 in our decision reads as follows: " That the crest elevation of the flood at Lock 9 occurred at about one o'clock in the morning of March 15th; the crest elevation at Lock 8 occurred about 1:30 A. M. on March 15th; in the city of Schenectady the peak elevation of the flood was reached about 2:00 A. M. on March 15th; at Visscher's Ferry dam the peak elevation was reached between 4:00 A. M. and 4:30 A. M."

In this connection it must be remembered that the pool caused by Visscher's Ferry dam extends up to and through the city of Schenectady. Yet notwithstanding this fact the water in Schenectady at the peak of the flood there was over eleven feet higher than it was at the crest of the dam when the peak reached that point two hours later. When the elevation of the water at claimant's premises about two A. M. on the morning of March fifteenth was between 228 and 229 feet above sea level it was only 215.6 feet above sea level at the crest of the dam, and the whole field of ice at that time, so far as the evidence shows, from the crest of the dam back to Schenectady, was moving and discharging over the dam on this stretch of water about 2,000 feet wide. It is apparent to us, therefore, that as this great height of water and ice came down the river from Schenectady it was received, swallowed up, and spread out over this great lake behind the dam so that its peak there was eleven feet lower than it was in Schenectady. And had it not been for this great body of water behind the dam to receive and float away these thousands of tons of ice which had made up the jams above Schenectady that had been breaking from time to time during the fourteenth and early hours of March fifteenth, it is very probable that the water in Schenectady would have been much higher than it was when it ran into claimant's cellar.

The claimant's counsel calls our attention to the decision of this court in the claim of *Proper* v. *State* (Claim No. 17518). That was a claim filed for damages resulting to claimant's premises in the city of Schenectady on the 24th day of March, 1923, caused by the flood waters of the Mohawk river. The facts in that case cannot be so clearly distinguished from the facts in the case at bar as the facts in the Glenville bridge case. It appears that this flood of March 24, 1923, was caused by an ice gorge in the Mohawk river at a point opposite the Schenectady sewage disposal plant between two and three miles below Schenectady; that there was also an ice gorge above Schenectady; that when the gorge above broke up it moved down the river causing high water in Schenectady which finally broke the gorge below the city and thereafter, as

the court found, " the elevation of the water surface at Schenectady and on claimant's premises became lower, receding gradually from claimant's premises."

Then the court made this finding, numbered 15 in its findings of fact, as follows: " The presence of the Visscher's Ferry dam in the river at the time of the flood of March 24, 1923, retarded the flow of the water and caused it to rise to a higher elevation. If the dam had not been there, the water would not have risen to so high an elevation as to flood claimant's premises."

Whatever the facts were that warranted the court in so finding in that case they are not present in the case before us for the evidence here clearly establishes the fact in our judgment that if it had not been for the Visscher's Ferry dam the water would have been higher at claimant's premises instead of lower on this night in question.

The State calls our attention to the decision of this court in the claim of *Sanders* v. *State* (Claim No. 2844-A).

That was a claim for damages to lands with growing crops thereon opposite the city of Schenectady, caused by a clear water flood in the Mohawk river on the 9th day of July, 1915. The claimants contended that if it had not been for the Visscher's Ferry dam the water would not have been high enough to damage their property. That case was decided December 13, 1919, and the claim was dismissed. Among other things this court at that time found as follows:

" 15. That with a precipitation of 6.30 inches in July, 1915, the flood reached an elevation of 220 at the Scotia bridge.

" 16. That in November, 1907, before the Visscher's Ferry Dam was built, a flood caused by a rainfall of 3.50 inches in the Mohawk Valley from November 1st to 10th caused the water to reach an elevation of 221.26 at the Scotia Bridge.

" 17. That the flood in the fall of 1907 was larger and the water was deeper than in July, 1915.

" 18. That due to the flattening of the slope of the river, caused by the greater length of the crest of the Visscher's Ferry Dam (1,700 feet) over that of the former dam at Rexford Flats (675 feet), the cutting of the hole in the Rexford Flats Dam and the excavation of the channel of the river, a clear water flood having a flow of more than 22,500 cubic feet per second causes a lesser elevation of the water surface at Schenectady than prior to the erection of the Visscher's Ferry Dam for the same discharge."

The 18th finding in the *Sanders* case above quoted is in accordance with the evidence presented on the trial of this claim and upon which we have based our 55th finding of fact, which reads

as follows: " That after Barge Canal construction a clear water flood having a discharge of 22,500 c. f. s. over the Visscher's Ferry Dam would raise the water in the city of Schenectady to the same level as before Barge Canal construction and for any greater discharge the elevation of the river in the city of Schenectady was lower than it would have been with the same discharge before Barge Canal construction."

The condition of a flood in the Mohawk river with ice between Schenectady and Visscher's Ferry dam could not be materially different from a clear water flood so long as the ice was moving and being borne along on the flood without interruption in the shape of an ice jam. We are of the opinion that the court is justified in assuming from the evidence in this case that such was the situation between Schenectady and Visscher's Ferry dam on this morning of March 15, 1929, from about twelve o'clock midnight of the fourteenth and through the morning of the fifteenth.

It is clear from the evidence that the ice jam above Schenectady gave way and precipitated a large amount of water and ice down the river and through the city about one A. M. raising the water in the river very rapidly till it went over the banks and reached its peak about an hour later. At the same time time the water was rising rapidly at the dam as appears by the gauge there. At midnight the water was four feet above the crest of the dam. At one A. M. the elevation was the same, but between then and three A. M. it raised a foot at the crest of the dam and one hour after the jam broke above Schenectady the whole field of ice on this immense pond back of the dam was sliding over the crest. It is apparent, therefore, that after this jam broke away above the city and let the great flood down behind it, it moved right along without interruption, carrying everything before it. At about two A. M. it reached its peak at Schenectady when the peak of this flood there had an elevation over twelve feet higher than the elevation of the water at the crest of the dam at that time although the ice was then going over the dam. It then commenced to subside rapidly in Schenectady, while it still kept rising for two hours longer at the crest of the dam when it reached its peak elevation there, which, however, was eleven feet lower than the peak elevation in Schenectady, although the pool elevation at both places was the same at low-water periods. This fact alone demonstrates the capacity of this pool immediately back of the dam, by reason of its depth and breadth, to absorb this great flood. It also establishes the fact that this lake back of this dam not only furnished an outlet for this flood as it came down from Schenectady but also that it had sufficient carrying power to shoot this immense ice

jam over the dam and prevent it piling up again and backing the flood up into the city after its crest had passed it.

We are of the opinion, therefore, that the damages suffered by the claimant herein were in no way contributed to by the Visscher's Ferry dam or by any other operation of the State in the Mohawk river and that these claims should be dismissed.

RYAN, J., concurs.